BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

FRANK J. RIEBLI (CABN 221152)
RITA F. LIN (CABN 236220)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Frank.Riebli@usdoj.gov
    Rita.Lin@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 15-579 VC |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| RAMON MEDINA AGUILAR, | Date: October 10, 2017 |
| Defendant. | Time: 10:30 a.m. |

## I. INTRODUCTION

Ramon Medina Aguilar stands before the Court for sentencing after pleading guilty to conspiracy to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count One), and distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A) (Count Twelve). Aguilar has pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement in which the parties agreed to recommend a sentence of 70 months.

Aguilar served as the lead courier for Eutimio Reyna-Ceron for over a year and half. Each day, he delivered heroin and methamphetamine twenty or thirty times a day, for ten to twelve hours a day, and prepared the drugs for distribution. Aguilar is married to Eutimio's niece and co-defendant,

Elizabeth Reyna-Rodriguez.  Perhaps because of his family position, he occupied a privileged position among the couriers.  He trained other couriers, including his co-defendants Remigio Madrigal Solorio and Santiago Rubio Chavez, on how to distribute the heroin and methamphetamine – the code words to use, the nicknames of the customers, the meeting locations, and the pricing.  In so doing, he was instrumental to expanding the organization's manpower and reach.  Occasionally, things would go awry.  One time, a customer paid in counterfeit bills.  Another time, drugs were stolen.  On another occasion, the organization suspected that a customer might be working with law enforcement.  Each time, Aguilar was the person who reported the issue to Eutimio Reyna-Ceron, and each time, he discussed with Eutimio how to resolve the issue and, where necessary, relayed the decision to the other couriers.  He was also Eutimio's eyes and ears with the customers:  he reported what the customers thought of the heroin and methamphetamine, and the price at which it was being sold.  Because of Aguilar's level of responsibility, the government recommends that he receive a higher sentence than the other couriers, who each sold drugs for a significantly shorter time period than he did.  The government joins in Probation's recommendation that Aguilar be sentenced to 70 months.

## II.     FACTUAL BACKGROUND

Day in and day out, beginning in April 2014 through December 2015, Ramon Medina Aguilar distributed heroin and methamphetamine to addicts and drug dealers on behalf of Eutimio Reyna-Ceron, his wife's uncle.  (PSR ¶ 26.)  Eutimio would call him and, using code, dispatch him to drive to a particular customer to deliver the drugs.  (*Id.*)  This would occur twenty to thirty times a day, bringing in cash of $2,500 to $3,500 per day, and resulting in the sale of approximately one-half kilogram of heroin per week.  (PSR ¶¶ 29, 46.)  Aguilar has admitted that he is responsible for 8 kilograms of heroin.  (PSR ¶ 29.)  Aguilar also prepared the drugs for distribution:  he diluted the heroin to increase the revenues, and then packaged it into smaller units for sale.  (*Id.*)

Aguilar occupied a trusted position in the organization.  Aguilar was the lead courier among the three couriers working for Eutimio who were charged in this case.  Aguilar trained new couriers on how to distribute drugs, including his co-defendants Remigio Madrigal Solorio and Santiago Rubio Chavez.  (PSR ¶ 28.)  He also reported on activities of the other couriers to Eutimio and relayed instructions that he had discussed with Eutimio to the others.  (PSR ¶ 28.)

When things went wrong, Eutimio relied on Aguilar, not the others, and trusted Aguilar with making sure that the others obeyed the instructions. For example, on June 14, 2015, while agents were monitoring a wiretap on Eutimio's phone, a confidential source called Eutimio to order two ounces of heroin. Eutimio then called Aguilar and reported that he thought the customer sounded different. The implication was that Eutimio was concerned that the customer was working with law enforcement. Though another courier was available, as well whom they called "Panzas," Eutimio entrusted Aguilar, not Panzas, to go assess the situation. He instructed Aguilar to drop off Panzas at the park and talk to the customer without bringing any drugs. When the confidential source and undercover officer arrived, Aguilar watched from a distance and reported to Eutimio that he believed the undercover officer looked similar to someone seen with a prior customer, again implying possible law enforcement surveillance. Eutimio entrusted Aguilar with the decision as to whether to proceed, saying that it was up to Aguilar what to do. Undeterred, Aguilar went ahead and sold the two ounces of heroin for $2,100. (PSR ¶ 27.)

On another occasion, on September 27, 2015, Aguilar sold drugs to someone who gave him $1,500 in counterfeit bills. His wife, Elizabeth Reyna-Rodriguez, told her father, Marcelino Reyna-Ceron, that Aguilar had reported the situation to "Gordo" (a moniker for Eutimio Reyna-Ceron). (Ex. A.) Again, Aguilar reported the situation, not any other courier. Moreover, according to Aguilar's wife, before this incident had occurred, Aguilar had previously advised Eutimio to avoid that customer, although Eutimio had not listened. (*Id.*) That again confirms Aguilar's role as a trusted advisor who was invested in the success of the operation, not just a courier carrying drugs.

Similarly, on December 8, 2015, four "pieces" (i.e., units of drugs) were stolen from another courier, Remigio Madrigal Solorio. Again, Aguilar, not Solorio, was the person who reported the theft to Eutimio. Aguilar and Eutimio discussed what price Solorio should have to pay, and then Eutimio directed Aguilar to tell Solorio their decision. Eutimio told Aguilar to be firm and clear with Solorio. Eutimio also entrusted Aguilar with the task of watching Solorio to make sure that Solorio was not stealing from the organization. (PSR ¶ 28.)

Eutimio also relied on Aguilar more generally to be his eyes and ears with the customers. Aguilar reported when customers did not like the heroin or methamphetamine, which allowed Eutimio to assess whether to change suppliers or to demand a refund or exchange from the supplier. For

GOVERNMENT'S SENTENCING MEMORANDUM
15-00579 VC

example, in a call on October 8, 2015, Eutimio asked for Aguilar's advice about whether to renegotiate with a supplier, or possibly exchange the existing product. Eutimio asked Aguilar whether they needed to lower the price to sell the drugs. Aguilar said that the customers were continuing to accept the drugs without complaint, so they should not lower the price for anyone. (Ex. B.) Aguilar suggested that they just finish it off. (*Id.*)

### III.   GUIDELINES CALCULATION

The government concurs with Probation's calculation of the Sentencing Guidelines. The Total Offense Level is 27. With a Criminal History Category of I, the sentencing range is 70 to 87 months.

### IV.   APPLICATION OF SECTION 3553(a) FACTORS

The government recommends a sentence of 70 months, which is at the low end of the Guidelines range. Aguilar's offense is significantly more serious than that of the other couriers. Although Aguilar's role was not significant enough to warrant an enhancement for acting as a manager and supervisor, his role does show the seriousness of his offense. Aguilar trained the other couriers, bringing additional people into this criminal activity. Aguilar was instrumental to the spread of the drug distribution network that he and Eutimio operated on a daily basis. He was the one looking into the eyes of the customers every day, as he delivered the heroin and methamphetamine that ravaged their lives and the lives of others. He was also the one who kept the other couriers in line, keeping an eye on Solorio to make sure he did not steal. He was the one that Eutimio relied upon to assess whether a customer was working with law enforcement. He was also the one that Eutimio entrusted with preparing the drugs for distribution: mixing the heroin with adulterants to allow the organization to increase its profits and packaging it in the appropriate units for distribution. Moreover, he was the one to whom Eutimio turned for advice about how customers were responding to the drugs, whether to renegotiate with a supplier, and what price to set. At every stage of the process, Aguilar was at the heart of the day-to-day drug distribution operation and showed himself to be deeply invested in its success.

To avoid unwarranted disparities in sentencing, it is appropriate that Aguilar receive a significantly longer sentence than the other two couriers who are his co-defendants in this case, while also receiving a sentence significantly shorter than that of Eutimio. Solorio received a sentence of 48 months, and Chavez received a sentence of 44 months. Eutimio was sentenced to 168 months. A

sentence of 70 months appropriately reflects Aguilar's responsibility.  Not only did Aguilar occupy a more trusted position than the other couriers, but he also worked with Eutimio much longer than the others did.  Solorio distributed drugs for two months, and Chavez distributed drugs for six months.  By contrast, Aguilar occupied his position for 20 months.

**V.      CONCLUSION**

For the foregoing reasons, the government recommends a low-end Guidelines sentence of 70 months imprisonment.

DATED: October 3, 2017               Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

_____/s/_____
FRANK J. RIEBLI
RITA F. LIN
Assistant United States Attorneys

GOVERNMENT'S SENTENCING MEMORANDUM
15-00579 VC