STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

CHRISTINA LIU (CABN 308362)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7199
    FAX: (415) 436-7234
    christina.liu@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 15-CR-00579-VC-4 |
|     Plaintiff, | UNITED STATES OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE FROM CUSTODY |
|   v. | |
| RAMON MEDINA AGUILAR, | |
|     Defendant. | |

# CONTENTS

**BACKGROUND**..........................................................................................................................1

**ARGUMENT**...........................................................................................................................…..2

**I.     DEFENDANT HAS ADMINISTRATIVELY EXHAUSTED**.................................2

**II.    REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED**...........................2

    A.    Applicable law................................................................................................2

    B.    Defendant has not presented extraordinary and compelling reasons warranting his release..............................................................................................................8

    C.    This Court may not modify Defendant's sentence because he is a danger to others............................................................................................................12

    D.    Section 3553(a) factors weigh against his release ..........................................14

**III.   IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH APPROPRIATELY RESTRICTIVE CONDITIONS**.......................................................15

**CONCLUSION** ……………………………………………………………………………….15

**Federal Cases**

| | |
|---|---|
| 1 | *Bonneau v. Salazar*, 804 F. App'x 717 (9th Cir. 2020)..................................................................12 |
| 2 | *Dillon v. United States*, 560 U.S. 817 (2010) ....................................................................... 4, 5, 7 |
| 3 | *Reeb v. Thomas*, 636 F.3d 1224 (9th Cir. 2011) .........................................................................12 |
| 4 | *Tapia v. United States*, 564 U.S. 319 (2011).................................................................................12 |
| 5 | *United States v. Arceo*, No. 09-CR-00616-EJD-1, Dkt. 86 (N.D. Cal. May 22, 2020)…………...7, 8 |
| 6 | *United States v. Ayon-Nunez*, 2020 WL 704785 (E.D. Cal. Feb. 12, 2020)...............................................7 |
| 7 | *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020)..............................................................4, 5 |
| 8 | *United States v. Burrill*, 445 F. Supp. 3d 22 (N.D. Cal. 2020).......................................................5 |
| 9 | *United States v. Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (N.D. Cal. May 4, 2020)…………….....3 |
| 10 | *United States v. Ceballos*, 671 F.3d 852 (9th Cir. 2011)..............................................................12 |
| 11 | *United States v. Chan*, 2020 WL 1527895 (N.D. Cal. Mar. 31, 2020).......................................................4 |
| 12 | *United States v. Eberhart*, 448 F. Supp. 3d 1086 (N.D. Cal. 2020)..................................... 4, 5, 7 |
| 13 | *United States v. Fobbs*, No. 19-CR-410 WHA, Dkt. 32 (N.D. Cal. Apr. 7, 2020)………………..…12 |
| 14 | *United States v. Greenhut*, 2020 WL 509385 (C.D. Cal. Jan. 31, 2020)........................................................6 |
| 15 | *United States v. House*, No. 14-cr-00196-CRB-1, Dkt. 2202 at 4 n.2 (N.D. Cal. May 20, 2020)…...….6 |
| 16 | *United States v. Jones*, No. CR 17-070 VC, Dkt. 93 (N.D. Cal. Apr. 10, 2020)………………...…12 |
| 17 | *United States v. Kelley*, 15-cr-00444-CRB-2, Dkt. 146 (N.D. Cal. May 27, 2020)……………….....4 |
| 18 | *United States v. Kim*, No. 17-CR-00355-YGR-1, Dkt. 96 (N.D. Cal. May 1, 2020)………………12 |
| 19 | *United States v. Mangarella*, 2020 WL 1291835 (W.D.N.C. Mar. 16, 2020)...........................................8 |
| 20 | *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020)……………………………...……….9 |
| 21 | *United States v. Reid*, No. 17-cr-00175-CRB-1, Dkt. 554 (N.D. Cal. May 5, 2020)………………..3 |
| 22 | *United States v. Robinson*, No. 18-CR-00597 RS, Dkt. 33 (N.D. Cal. Apr. 27, 2020)…………….....3 |
| 23 | *United States v. Rodriguez*, 2019 WL 6311388 (N.D. Cal. Nov. 25, 2019)............................................4 |
| 24 | *United States v. Saldana*, 807 F. App'x 816 (10th Cir. 2020)......................................................5 |
| 25 | *United States v. Shabudin*, No. 11-CR-00664-JSW-1, Dkt. 571 (N.D. Cal. May 12, 2020)…………..6 |
| 26 | *United States v. Shields*, 2019 WL 2645028, (N.D. Cal. June 27, 2019)..................................................4 |
| 27 | *United States v. Sprague*, 135 F.3d 1301 (9th Cir. 1998)........................................................6 |

*United States v. Weidenhamer*, 2019 WL 6050264 (D. Ariz. Nov. 8, 2019) ............................................7

*United States v. Willingham*, 2019 WL 6733028 (S.D. Ga. Dec. 10, 2019) ...........................................4

*United States v. Zaragoza*, 2008 WL 686825 (N.D. Cal. Mar. 11, 2008) .............................................14

### Federal Statutes

18 U.S.C. § 3142 ................................................................................................................ 3, 12, 13, 14

18 U.S.C. § 3553 .............................................................................................................................. 2, 14

18 U.S.C. § 3582 ................................................................................................... 1, 2, 4, 5, 7, 8, 14, 15

18 U.S.C. § 3621 ..................................................................................................................................12

18 U.S.C. § 3624 ............................................................................................................................11, 12

21 U.S.C. § 841 .....................................................................................................................................1

21 U.S.C. § 846 .....................................................................................................................................1

28 U.S.C. § 994(t) .................................................................................................................................4

Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281,
    § 12003(b)(2) (March 27, 2020) ....................................................................................................11

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (effective December 21, 2018) .................6

### Federal Rules

Federal Rule of Criminal Procedure 11 .................................................................................................1

### Other Federal Authorities

United States Sentencing Guidelines (USSG) ............................................................................*passim*

Defendant Ramon Medina Aguilar is currently serving a 70-month sentence for his convictions of conspiracy to distribute and possess with intent to distribute heroin and methamphetamine (Count 1) and distribution and possession with intent to distribute heroin (Count 12), at Reeves I & II CI, with an anticipated release date of September 17, 2022. He seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 797 (Motion). The United States opposes Defendant's motion.

## BACKGROUND

Defendant was charged with violations of 21 U.S.C. §§ 846 (conspiracy to distribute and possess with intent to distribute heroin and methamphetamine) (Count 1), 841(a)(1) and (b)(1)(C) (distribution and possession with intent to distribute heroin) (Counts 10-12, 14), and 841(a)(1) and (b)(1)(A) (distribution and possession with intent to distribute 50 grams and more of methamphetamine) (Count 13). Dkt. 179 (Superseding Indictment). Defendant was arrested and detained pending trial.

On March 22, 2017, Defendant was convicted by plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) of drug conspiracy (Count 1) and heroin distribution and possession with intent to distribute (Count 12). Defendant's plea agreement waived his right to move for relief under 18 U.S.C. § 3582.[1] Dkt. 332 (Plea Agreement) ¶ 4. Defendant's conviction was based on his conduct in conspiring to distribute and distributing heroin and methamphetamine between April 2014 and December 2015. *Id.* ¶ 2. He did so by processing and packaging drugs for delivery, delivering drugs as a courier, receiving drug payments from drug customers, and training new drug couriers. *Id*. Between May and December 2015, for example, Defendant and his associates distributed approximately half a kilogram of heroin and additional quantities of methamphetamine per week and they took in between $2,500 and $3,500 per day in drug proceeds. *Id*.

On October 10, 2017, this Court sentenced Defendant to two concurrent terms of 70 months of imprisonment and two concurrent terms of five years of supervised release. Dkt. 568 at 2, 3 (Judgment). The Court recommended that Defendant be placed in a facility as close as possible to Manteca, California to facilitate family visits. *Id.* at 2. This Court ordered Defendant to self-surrender on November 9, 2017. Defendant is presently serving his sentence at Reeves I & II, CI in Texas, with a

---

[1] The United States, however, does not invoke the § 3582 waiver as a basis to deny this motion.

GOV'T OPP. TO DEF.'S MOT. FOR RELEASE FROM CUSTODY
CR 15-00579-VC-4                           1

projected release date of September 17, 2022.  U.S. Federal Bureau of Prisons, Find an inmate, *available at* https://www.bop.gov/inmateloc/ (last accessed Mar. 9. 2021).

Defendant is presently 30 years old and has an active immigration detainer from U.S. Immigration and Customs Enforcement (ICE) in his file.  The U.S. Probation Office's Presentence Investigation Report noted that Defendant had no health conditions.  His medical records, obtained from the Bureau of Prisons (BOP), also appear not to document any health conditions other than latent tuberculosis, a condition for which Defendant refused further treatment.

On December 10, 2020, Defendant submitted a petition for compassionate release to the Facility Administrator at Reeves I & II, CI.  Ex. 1 to Motion.  The Facility Administrator made a non-final recommendation denying his petition based on the active ICE detainer.

## ARGUMENT

### I.  DEFENDANT HAS ADMINISTRATIVELY EXHAUSTED

Because Defendant has exhausted the statutory prerequisites for seeking judicial relief, this Court may consider Defendant's motion.  Defendant submitted a letter dated December 10, 2020 to the facility administrator at Reeves I & II, CI requesting compassionate release.  Ex. 1 to Mot.  Thirty days have lapsed since December 10, 2020; thus, this Court may review Defendant's motion on the merits.

### II.  REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED

Although the COVID-19 pandemic is an extraordinary world event, Defendant has failed to show that that its impact on him, specifically, warrants his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because he is not suffering from a medical condition that the CDC has identified as particularly at risk for severe symptoms if he were to contract COVID-19, because he presents a danger to the community, and because re-balancing the Section 3553(a) factors does not indicate Defendant should be released immediately as he seeks.

#### A.  Applicable law

This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent

with applicable policy statements issued by the Sentencing Commission." *See, e.g.*, *United States v. Reid*, No. 17-cr-00175-CRB-1, Dkt. 554 (N.D. Cal. May 5, 2020); *United States v. Robinson*, No. 18-CR-00597 RS, Dkt. 33 (N.D. Cal. Apr. 27, 2020).

The pertinent policy statement is set forth at United States Sentencing Guidelines (USSG) § 1B1.13. It prohibits this Court from reducing a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See United States v. Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (N.D. Cal. May 4, 2020) (denying compassionate release claim due to danger).

The Sentencing Commission also provided explicit examples of what constitutes an "extraordinary and compelling circumstance":

(A) **Medical Condition of the Defendant.**—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant** — The Defendant is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the ageing process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.

(C) **Family Circumstances.** —

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

USSG § 1B1.13 cmt. n.1.

USSG § 1B1.13 is binding on district court's discretion in determining whether the defendant has presented an extraordinary and compelling reason for early release. Any reduction in a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission," which are included in USSG § 1B1.13. The Supreme Court analyzed an identical statutory requirement in § 3582(c)(2) and held that the relevant USSG policy statement is binding, not advisory. *Dillon v. United States*, 560 U.S. 817, 819, 825–28, 830 (2010). The same logic applies here.[2] While some courts have held that the First Step Act of 2018 altered the binding nature of USSG § 1B1.13, which has not been updated since the Act's passage to reflect that defendants can file their own motions after exhausting administrative remedies, the First Step Act did not alter the key language that the Supreme Court found determinative and binding with respect to subpart (c)(2) in *Dillon*. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (effective December 21, 2018). The Second Circuit recently held that USSG § 1B1.13 is out of step with Congress' intent shown by passing the First Step Act and thus does not apply to motions made by defendants rather than the Director of BOP. *United States v. Brooker*, 976 F.3d 228, 234–37 (2d Cir. 2020).[3]

This Court should reject the Second Circuit's position, which is inconsistent with *Dillon*— precedent which *Brooker* fails entirely to address. *See Brooker*, 976 F.3d at 234–38. This Court should instead join the other courts that have found USSG § 1B1.13 to remain binding, and hold that the policy

---

[2] As the Court found in *Dillon*, here Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples." The statute also states that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

[3] District courts across the country are divided over this question, including in this district. *Compare United States v. Rodriguez*, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) (holding that because the policy statement has not been revised since the First Step Act was enacted, district courts are free to consider circumstances beyond those enumerated in USSG § 1B1.13), *and United States v. Chan*, 2020 WL 1527895, at *8 (N.D. Cal. Mar. 31, 2020) (same), *with United States v. Flores*, 17-CR-00373-CRB-2, ECF No. 85 at 3 (N.D. Cal. Sept. 21, 2020) (holding USSG § 1B1.13 is still binding and citing *Dillon*), *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same), *and United States v. Shields*, 2019 WL 2645028, (N.D. Cal. June 27, 2019). *See also United States v. Willingham*, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (collecting district court cases finding USSG § 1B1.13 to be binding, and those finding it not to be).

statement constrains courts in all motions brought under 18 U.S.C. § 3582(c)(1)(A), not just those brought by the Director of BOP. *See, e.g., United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020) (dismissing motion for lack of jurisdiction where defendant's motion did not claim a reason identified within USSG § 1B1.13). Following the logic of the Second Circuit's opinion means a defendant could bring a request to BOP that BOP is required to deny under USSG § 1B1.13, but which the district court could then review without any similar limitation. This would run counter to Congress' intent "to authorize only a limited adjustment to an otherwise final sentence." *Dillon*, 560 U.S. at 826.

Notably, the First Step Act did not change the factors relevant to whether and how the courts should modify a defendant's sentence, only the procedures by which a defendant can raise such claims. Congress could have updated the substantive requirements for § 3582(c)(1)(A) motions, but it did not do so. Rather, Congress altered only procedurally who could bring a motion under § 3582(c)(1)(A) to the district court, and, indeed, titled the portion of the First Step Act "Increasing the Use and Transparency of Compassionate Release." *Brooker*, 976 F.3d at 233 (citing P.L. 115-391 § 603(b), 132 Stat. 5194, 5239). But increasing the use of the procedural vehicle, the transparency of the decision-making process, and the speed with which a defendant receives an answer does not implicate *the criteria* courts should use for determining if early release is appropriate. Congress left the requirements for eligibility untouched by the First Step Act and still squarely within the Sentencing Commission's hands.

The best way to align with *Dillon*, preserve the language of USSG § 1B1.13, and remain consistent with Congressional intent, is not to disregard the policy statement entirely when a defendant brings a compassionate release motion, as the Second Circuit held in *Brooker*, 976 F.3d at 234–37, but to continue to use the policy statement to define the criteria for defendants to be eligible for early release *whether BOP or the defendant makes the motion* for sentence reduction. At the very least, even courts who "have found the provision to be outdated have held it continues to provide 'helpful guidance.'" *United States v. Burrill*, 445 F. Supp. 3d 22, 24–25 n.2 (N.D. Cal. 2020) (citation omitted). Continuing to follow the listed reasons in USSG § 1B1.13 also furthers the policy of keeping "statutory exceptions to the general rule of finality of judgment" limited. *Eberhart*, 448 F. Supp. 3d at 1090 (citing *Dillon* and holding USSG § 1B1.13 is still binding).

Thus, in order to qualify for compassionate release after having exhausted his or her administrative remedies with the Bureau of Prisons, a defendant must be able to demonstrate one of the listed reasons in (A)–(C) above. *See United States v. Kelley*, 15-cr-00444-CRB-2, Dkt. 146 (N.D. Cal. May 27, 2020). The "catch-all" in USSG § 1B1.13 application note 1(D) should be read in the manner of maintaining some administrative discretion within BOP to determine if there are additional reasons, beyond what is strictly described in (A)–(C) but within the same type of considerations (*e.g.*, deteriorating mental or physical health, exigent family circumstances, or medical conditions which diminish an inmate's ability to provide self-care in prison).[4] In this case, the Director of BOP did not identify any "extraordinary and compelling reason" under Application Note 1(D), which is thus inapplicable to this situation. *See United States v. House*, No. 14-cr-00196-CRB-1, Dkt. 2202 at 4 n.2 (N.D. Cal. May 20, 2020) (holding (D) inapplicable even in light of the COVID-19 pandemic). Changes in sentencing law do not fall under any of the categories listed in USSG § 1B1.13.

Defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See United States v. Shabudin*, No. 11-CR-00664-JSW-1, Dkt. 571 (N.D. Cal. May 12, 2020); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, Defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A). If a defendant's medical condition does not fall

---

[4] Indeed, BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. *See* https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

within one of the categories specified in the application note (and no other part of the application note applies), his or her motion must be denied.

The existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself fall into either of those categories and therefore could not alone provide a basis for a sentence reduction.[5] As Chief Judge Hamilton recently held in this district, "General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13." *Eberhart*, 448 F. Supp. 3d at 1090; *see also United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population.

Nor would a defendant's chronic but manageable underlying medical condition, alone, constitute "extraordinary and compelling" circumstances. *See United States v. Arceo,* No. 09-CR-00616-EJD-1, Dkt. 86 (N.D. Cal. May 22, 2020) ("[T]he mere fact that Defendant suffers from chronic conditions is insufficient [for compassionate release]."). Indeed, before the outbreak of COVID-19, district courts addressing § 3582(c)(1)(A) claims routinely noted: "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy) (quoting *United States v. Weidenhamer*, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019)). Compassionate release is "rare" and "extraordinary" and courts routinely

---

[5] Indeed, it is reported that some inmates are trying to contract COVID-19 in the hopes that it will enable them to get released from prison. *See* https://www.washingtonpost.com/nation/2020/05/12/inmates-coronavirus-infect-los-angeles/ (inmates in LA county jail have attempted to infect themselves with COVID-19 in order to be released).

deny such claims. *See Arceo*, No. 09-CR-00616-EJD-1, Dkt. 86 (noting compassionate release is rare); *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event." (citation omitted)).

But the combination of an inmate's chronic medical condition and the risk of contracting COVID-19 in a custodial setting may constitute an extraordinary and compelling reason to grant a motion under 18 U.S.C. § 3582(c)(1)(A), where COVID-19 and an inmate's medical condition would not individually suffice. If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[6] that condition—in combination with the likelihood that a defendant may contract COVID-19 while incarcerated and suffer severe symptoms as a result—may constitute a "serious" medical condition "from which [the defendant] is not expected to recover," which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13 cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should also consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

### B. Defendant has not presented extraordinary and compelling reasons warranting his release

Defendant has not demonstrated that he has the sort of medical condition that places him on the CDC list of at-risk individuals who may suffer severe symptoms if they contract COVID-19. *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last accessed Mar. 9, 2021). Indeed, Defendant does not allege that he has any underlying health conditions that would render him particularly susceptible to severe illness if he were to contract COVID-19.

---

[6] *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified July 17, 2020).

Instead, Defendant asserts in his motion that in August 2020, he experienced symptoms consistent with COVID-19—a low grade fever, a sore throat, muscle and joint pain, shortness of breath, loss of smell and taste, and headaches—but reports these symptoms have since subsided, leaving him with shortness of breath, exhaustion, fatigue, "roughness in the chest," and piercing lung pain. Mot. 4-5. He claims that he developed these symptoms but was not tested for COVID-19 or provided any treatment other than a suggestion that he buy allergy medication. *Id*. These allegations, however, appear to be unsupported by his BOP medical records, as there is no documentation of his reporting of such symptoms to facility staff. *See id*.

What Defendant's medical records do document is his history of latent tuberculosis, as well as his subsequent refusal of additional prophylaxis treatment for this condition despite a warning that such a refusal could risk turning his tuberculosis status and possibly result in death. Defendant does not claim his latent tuberculosis as a basis for his request for compassionate release. Even if he did, his latent tuberculosis would not qualify as an extraordinary or compelling reason for his compassionate release given his refusing further treatment to manage or address this condition.

Thus, the United States submits, Defendant is not particularly at a higher risk of severe illness or death from COVID-19 according to CDC guidance and, as a result, Defendant does not meet any of the listed reasons in USSG § 1B1.13 Application Note 1. Nor can Defendant describe any particularized reason why he should be released apart from any other convicted defendant serving time at Reeves I & II, CI; Defendant has not, for example, argued he is at higher risk of getting sick or dying from COVID-19 based on a particular underlying health condition of his such as heart disease, diabetes, or lung disease. *See* Centers for Disease Control and Prevention, People with Certain Medical Conditions, *available at* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last accessed Mar. 9, 2021).

Furthermore, BOP has taken significant measures to protect the health of inmates in its charge. BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a

"[s]uspected human outbreak overseas." *Id.* at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates. The Action Plan requires that all inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease. Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited the movement of inmates and detainees among its facilities. Though there will be exceptions for medical treatment and similar exigencies, this step as well will limit transmissions of the disease. Likewise, all official staff travel has been cancelled, as has most staff training. All staff and inmates have been and will continue to be issued face masks and strongly encouraged to wear an appropriate face covering when in public areas when social distancing cannot be achieved.

The Action Plan comprises of several additional preventive and mitigation measures, including suspension of social visitation, internal inmate movements, legal visits, official staff travel, training, access by volunteers and many contractors; extensive screening of staff and inmates (including screening of all new inmates); quarantine; and modified operations to maximize social distancing as much as practicable. *See* Federal Bureau of Prisons, BOP Implementing Modified Operations, *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed Mar. 9, 2021). All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures.

As of May 18, 2020, all newly admitted inmates to any BOP detention center, jail, and institution will be tested at a quarantine site for COVID-19, in addition to screening them for COVID-19 symptoms and a temperature check, before they enter their designated BOP facility.[7] The testing will be conducted either using Abbott instruments on-site or through commercial lab contracts. Inmates who test positive

---

[7] *See* Federal Bureau of Prisons, BOP Announces Update on Inmate Movement, *available at* https://www.bop.gov/resources/news/pdfs/20200527_press_release_inmate_movement.pdf.

or have symptoms consistent with COVID-19 will be placed in isolation, even if asymptomatic, until they meet the current CDC release-from-isolation criteria. COVID-19 negative inmates will be placed in quarantine for 14 days and have twice daily symptom screening and temperature checks. If they develop COVID-19 symptoms during the 14 days, they will be retested for COVID-19 and placed in isolation. At the end of the 14-day quarantine, an inmate will be retested for COVID-19. If the test is negative, the inmate will be deemed appropriate to transfer from the quarantine site to their designated institution. Both inmates and staff are required to wear face masks during any transfer that occurs.

Additionally, in light of the global pandemic, the BOP has been given expanded authority to review inmates who are potentially vulnerable to COVID-19 earlier in their sentences for transfer from a secure facility to home confinement. The Attorney General has directed the Director of the BOP to prioritize granting home confinement to eligible inmates who are especially vulnerable to COVID-19 based on their age and underlying health conditions as identified by the Centers for Disease Control and Prevention ("CDC"), where home confinement would be more effective in protecting their health, and not present a great risk to public safety. Att'y Gen. Memo. (Mar. 26, 2020). The Attorney General has also invoked his emergency authority to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2)." Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116-136, 134 Stat. 281, § 12003(b)(2) (March 27, 2020). As a result, BOP is broadly evaluating inmates for placement in home confinement according to internal guidelines, with priority given to those most vulnerable to COVID-19 and those at facilities most affected by COVID-19. Att'y Gen. Memo. (April 3, 2020); *see also* BOP Memo. (May 8, 2020) (providing updated guidance allowing for consideration for home confinement of inmates with minor disciplinary issues within the past twelve months).

Pursuant to the Attorney General's directive, BOP is urgently assessing the inmate population for home confinement. To date, BOP has transferred 22,539 inmates to home confinement since March 27, 2020, and BOP continues to aggressively screen all potential inmates for eligibility, without any need by the inmate to apply for consideration. *See* COVID-19 Home Confinement Information,

https://www.bop.gov/coronavirus/ (last accessed Mar. 9, 2021).[8]

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

Defendant is serving his sentence at Reeves I & II, CI, which, according to BOP counsel and as of March 8, 2021, has had no known active cases of inmates or staff testing positive for COVID-19, no known inmate or staff deaths resulting from COVID-19, and 20 known cases of inmates and 49 known cases of staff who have recovered from COVID-19. The facility is awaiting its first shipment of vaccines. Due to his age and health, there is no estimate of when Defendant will be offered the vaccine.

### C. This Court may not modify Defendant's sentence because he is a danger to others

This Court may not reduce Defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). *See Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (denying compassionate release claim due to danger). This record precludes such a finding.

Defendant's argument, interpreted broadly, is that any danger he poses a danger to the community is outweighed by the risk that any continued exposure to COVID-19 at the facility will cause him to suffer a heightened risk of complications or death. *See* Mot. at 10-11; *see also* Mot. at 9-10. But Defendant has not substantiated his claim that he specifically faces a greater COVID-19 risk than other

---

[8] The United States notes, and the Court is likely aware, that BOP has exclusive authority to determine the location where an inmate serves his or her custodial sentence, including whether transfer from a secure facility to home confinement under 18 U.S.C. § 3624(c) is more appropriate for a particular defendant. *See United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) ("The Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *Reeb v. Thomas*, 636 F.3d 1224, 1226 (9th Cir. 2011) ("Congress delegated to the BOP the duty to manage and regulate all federal penal and correctional institutions."); *see also Bonneau v. Salazar*, 804 F. App'x 717, 718 (9th Cir. 2020) (holding home confinement is a decision that is solely within the province of the BOP); *see also Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs]."). Although this Court may make a non-binding recommendation to BOP as to home confinement, BOP's designation decision "is not reviewable by any court." 18 U.S.C. §§ 3621(b) & 3624(c); *see, e.g.*, *United States v. Kim*, No. 17-CR-00355-YGR-1, Dkt. 96 (N.D. Cal. May 1, 2020) (denying defendant's motion for compassionate release but recommending BOP place defendant in home confinement); *United States v. Jones*, No. CR 17-070 VC, Dkt. 93 (N.D. Cal. Apr. 10, 2020) (same); *United States v. Fobbs*, No. 19-CR-410 WHA, Dkt. 32 (N.D. Cal. Apr. 7, 2020) (recommending BOP place defendant in home confinement).

inmates serving time at his facility, as discussed above, and he has not shown that his release from custody would not pose a danger to the community.

Under § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that Defendant is not a danger to the safety of any other person or the community.

In this case, Defendant engaged in serious and dangerous conduct as summarized by the following excerpt from the United States' sentencing memorandum:

> Aguilar trained the other couriers, bringing additional people into this criminal activity. Aguilar was instrumental to the spread of the drug distribution network that he and Eutimio operated on a daily basis. He was the one looking into the eyes of the customers every day, as he delivered the heroin and methamphetamine that ravaged their lives and the lives of others. He was also the one who kept the other couriers in line, keeping an eye on Solorio to make sure he did not steal. He was the one that Eutimio relied upon to assess whether a customer was working with law enforcement. He was also the one that Eutimio entrusted with preparing the drugs for distribution: mixing the heroin with adulterants to allow the organization to increase its profits and packaging it in the appropriate units for distribution. Moreover, he was the one to whom Eutimio turned for advice about how customers were responding to the drugs, whether to renegotiate with a supplier, and what price to set. At every stage of the process, Aguilar was at the heart of the day-to-day drug distribution operation and showed himself to be deeply invested in its success.

Dkt. 555 (Gov't Sent'g Mem.). In other words, Defendant took on an extensive and central role in the drug trafficking schemes, and granting him immediate compassionate release before the completion of his custodial sentence would present too great a risk of Defendant returning, undeterred, to continue these dangerous drug trafficking activities. That he has an active ICE detainer in his file does not change this analysis: If Defendant is deported to Mexico upon his release, he will most likely illegally reenter the United States instead of staying in Mexico, given that both his partner (convicted co-defendant Elizabeth Reyna-Rodriguez) and their son are U.S.

citizens who have never lived in Mexico and are therefore unlikely to move to Mexico with him. His return to the United States would risk his return to drug trafficking activity, which would present a danger to the community. *See United States v. Zaragoza*, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) (Spero, J.) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm.").

Defendant remains a danger to the community and should be detained. He has not shown that his current medical condition or risk of COVID-19 (a risk that applies in the community as well) makes him less of a danger. The defense presents no additional facts that meaningfully shift the balance of the § 3142(g) factors in Defendant's favor.

In sum, Defendant has failed to demonstrate that the § 3142(g) factors the Court considered at the time of detention have changed. The Court should deny his motion for immediate release.

**D.     Section 3553(a) factors weigh against his release**

Finally, any compassionate-release decision—even for a statutorily eligible defendant—must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i). In this case, Defendant has about 18 months left on his 70-month sentence (approximately 26% left), and the § 3553(a) factors still counsel in favor of his continued detention.

Defendant does not substantively address any of the § 3553(a) factors in his motion. Those factors—which this Court already considered when imposing Defendant's sentence—do not support his request for premature, permanent release. As discussed in the United States' sentencing memorandum, Defendant played a central and critical role in the drug trafficking scheme by preparing drugs for delivery, delivering drugs as a courier, training and managing the other couriers, and giving advice on how to run the drug distribution network. Dkt. 555 at 4. Based on the gravity of his conduct, his heightened culpability, and the need to avoid unwarranted sentencing disparities with the co-defendants in this case, the United States argued at sentencing that a 70-month sentence was appropriate and warranted for this Defendant. *See id.* at 4-5. These sentencing considerations still hold true today.

Granting Defendant's motion under 18 U.S.C. § 3582(c)(1)(A) would undermine these factors, resulting in an effective sentence that is approximately 26% shorter than the one that this Court deemed necessary for Defendant at the time of his sentencing.

Furthermore, granting compassionate release at this stage is premature because Defendant has not proposed a post-release plan. The active ICE detainer in his file indicates that he will likely be deported to Mexico at the time of his release. However, Defendant has not indicated whether he would be released to a stable housing environment in Mexico or how he plans to make a new life for himself in Mexico while his partner (convicted co-defendant Reyna-Rodriguez) and their son remain in the United States, where they are U.S. Citizens. He does not claim that his partner and their son, neither of whom has ever lived in Mexico, are ready, willing, or able to move to Mexico with him in the event of his immediate release. Thus, if Defendant is prematurely released, he will likely make illegal reentry back into the United States, where he may return to his drug trafficking activities undeterred.

### III. IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH APPROPRIATELY RESTRICTIVE CONDITIONS

If the Court is inclined to grant compassionate release, this Court should (1) order any release only after Defendant's travel and post-release plans are in place and, to minimize any risks to public health, (2) set any release for 14 days from the date of its order to accommodate BOP's ability to quarantine Defendant prior to his release to protect the community from potential further spread.

### CONCLUSION

Defendant is a danger to others. He has not presented evidence of a serious medical condition that substantially impairs his ability to provide self-care or any other extraordinary or compelling reason to warrant a reduced sentence. This Court should deny Defendant's motion for immediate release under 18 U.S.C. § 3582(c)(1)(A)(i).

DATED: March 9, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

*/s/ Christina Liu*
CHRISTINA LIU
Assistant United States Attorney